UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────

ANSON CHI,

                    Petitioner,

         v.                                          9:18-CV-1212
                                                     (MAD)
FERNANDEZ, Warden,

                    Respondent.

───────────────────────────────

APPEARANCES:                                OF COUNSEL:

ANSON CHI
Petitioner, pro se
44588-177
McKean Federal Correctional Institution
Inmate Mail/Parcels
P.O. Box 8000
Bradford, Pennsylvania 16701

HON. GRANT JAQUITH                          THOMAS SPINA, JR., ESQ.
United States Attorney for the              Ass't United States Attorney
Northern District of New York
100 South Clinton Street
P.O. Box 7198
Syracuse, New York 13261

MAE A. D'AGOSTINO
United States District Judge

**DECISION and ORDER**

**I.      INTRODUCTION**

        Petitioner Anson Chi, presently in the custody of the Bureau of Prisons ("BOP"), seeks

a writ of habeas corpus pursuant to 28 U.S.C. § 2241, asking this Court to compel the BOP

to accept petitioner's appeals challenging two disciplinary sanctions. Dkt. No. 1, Petition

("Pet."). Respondent opposed the petition and provided records relevant to petitioner's

claims. Dkt. No. 22, Memorandum of Law in Opposition ("Resp. Memo."); Dkt. No. 22-1,

Exhibits ("Ex.").[1]  Petitioner then filed a reply.  Dkt. No. 24, Traverse.  For the reasons outlined below, the petition should be denied and dismissed.

## II.    RELEVANT BACKGROUND[2]

Petitioner is serving a 240-month sentence, pursuant to a guilty plea, for possession of an unregistered firearm and malicious use of explosive materials.  *See United States v. Chi*, 708 F. App'x 184, 184 (5th Cir. 2017).  While incarcerated, petitioner acquired two disciplinary violations, the appeals of which are the subject of the present petition.

### A.    July 27, 2017

On July 27, 2017, petitioner was given a disciplinary report for (1) interfering with a security device and (2) refusing to obey a direct order.  Pet. at 18.  In a written statement, petitioner "admit[ted] to sticking his arm through the food slot and refus[ing] to move his arm." *Id.*  This admission was consistent with the report from the officer issuing the ticket, indicating that while in the Special Housing Unit ("SHU"), the officer observed petitioner hanging his arm out of his food tray slot, refusing to remove his arm, and preventing the slot from being secured.  *Id.*

The disciplinary hearing officer ("DHO") noted that during the hearing petitioner "was asked if he had a statement concerning the alleged code violation [and petitioner] continued to address the other things not related to the charge.  [Petitioner] invariably became uncooperative and was eventually removed from the room."  Pet. at 19.  Ultimately, the DHO

---

[1]  Within respondent's attached exhibits is an affidavit from Cheryl Magnusson, Legal Assistant at the Consolidated Legal Center at the Federal Medical Center in Devens, Massachusetts, Dkt. No. 22-1 at 1-3, Affidavit ("Magnusson Aff.").

[2]  Citations to the filings in this case refer to the pagination generated by CM/ECF, the Court's electronic filing system.

found that petitioner (1) interfered with a security device by refusing to remove his arm from the food slot and (2) failed to obey a direct order to remove his arm from the food slot. *Id.* Petitioner was sanctioned as follows: (1) loss of 27 days good time credit ("GTC"); (2) 30 days segregation; and (3) loss of phone and visitation privileges for 180 days. *Id.*

On September 13, 2017, petitioner appealed the decision to the BOP's Southeast Regional Office ("SERO"). Pet. at 13-15; Ex. at 5. On September 26, 2017, SERO denied petitioner's appeal. Magnusson Aff. ¶ 8, Ex. at 7. Specifically, the Director noted that the disciplinary proceedings substantially complied with the BOP's policies and procedures for inmate discipline and that the sanctions issued were appropriate. Magnusson Aff. ¶ 8; Ex. at 7. Petitioner was then advised that if he was "dissatisfied with this response, [petitioner could] appeal to the Office of General Counsel, Bureau of Prisons . . . [said] appeal must be received in the Office of General Counsel within 30 calendar days of [September 26, 2017.]" Ex. at 7. Petitioner did not file anything further with the Office of General Counsel. Magnusson Aff. ¶ 9.

On February 15, 2018, petitioner filed a subsequent letter to SERO. Pet. at 16-17.[3] In it, petitioner argued he timely filed an appeal in September and had not received any response. *Id.* at 16. Further, petitioner reported that he filed additional appeals in October and January, again without response. *Id.* Petitioner concluded by warning SERO that if it "d[id] not respond for a fifth time, [petitioner] w[ould] file an appeal with the Central Office and if that d[id] not work, then [he] w[ould] file a 2241 Petition for a Writ of Habeas Corpus[.]" *Id.* at 16-17.

---

[3] This letter does not appear in the Administrative Remedy Generalized Retrieval output log, Ex. at 9-24.

3

**B.     April 23, 2018**

On April 23, 2018, petitioner was given a disciplinary report for (1) threatening another with bodily harm and (2) refusing to obey a staff order.  Pet. at 53.  Petitioner attended a disciplinary hearing on May 1, 2018.  *Id.*  At that hearing, petitioner was "advised of his rights before the DHO," and elected to make a statement contending that he was subjected to excessive force and cruel and unusual punishment.  *Id.*

The DHO found petitioner guilty on both counts.  Pet. at 55.  The DHO's report first indicated that there was a one-day delay in providing petitioner with the incident report because it had to be re-written; however, "[t]he DHO d[id] not believe this minor delay infringed upon the panoply of [petitioner's] due process rights, impede[d] his ability to defend himself against the charge, or prejudice[d] his defense," as petitioner was afforded an impartial decision-maker, notice of the charges, the opportunity to call witness and present evidence, assistance from a representative, and a written decision explaining the ultimate outcome of the hearing.  *Id.* at 54.  The report then went on to detail the rationale behind the DHO's finding.  *Id.* at 54-55.

Specifically, the DHO relied upon the incident report from the staff member which stated petitioner refused to get on the body scan machine because of a medical condition causing headaches.  Pet. at 55.  The officer contacted the medical department to confirm petitioner's condition.  *Id.*  The medical department searched petitioner's medical records and could find no indication of any medical condition which would preclude him from being scanned.  *Id.*  The nurse also provided a written statement for the hearing, confirming the same.  *Id.*  The officer then escorted petitioner back to the machine, telling him to get

scanned, and petitioner threatened him with the response that he would "file all types of paperwork on all of [the officers] thru [petitioner's] attorney, and . . . freeze all of [the officer's] assets and have [the officer] in court for the rest of [his] life."  *Id.*  Petitioner was ultimately escorted back to the SHU.  *Id.*  The DHO ascribed greater weight to the incident report and nurse's statement than petitioner's contentions that excessive force and cruel and unusual punishment resulted.  *Id.*  The DHO sanctioned petitioner as follows: (1) loss of 27 days of GTC; (2) forfeiture of 30 days non-vested good time; (3) 30 days segregation; and (4) loss of MP3, phone, and commissary privileges for 180 days.  *Id.*

Petitioner attempted to appeal the DHO's decision several times.[4]  The first letters he wrote to the Administrative Coordinator at the Northeast Regional Office ("NERO") were on May 17, 2018, and included a ten-page affidavit explaining the events of April 23, 2018 through April 25, 2018.  Pet. at 21-30, 39.  Petitioner sent a second appeal to NERO, dated May 30, 2018, which explained he never threatened the staff and the disciplinary report was filed in retaliation for petitioner's refusal to go through the scanner.  Pet. at 31-32.  Petitioner repeated his complaints that he was subjected to excessive force and cruel and unusual punishment.  *Id.* at 31.

The second appeal was stamped received by NERO on June 5, 2018.  Pet. at 31-32. The appeal was rejected by NERO on June 11, 2018.  *Id.* at 49; Magnusson Aff. ¶ 11; Ex. at 19.  Specifically, the appeal (1) failed to provide all of the information necessary for the appeal to be considered (i.e. the case number); (2) was illegible; (3) attached more than one continuation page in addition to the required appeal form; and (4) included an improper

---

[4]  The Administrative Remedy Generalized Retrieval Log indicated that NERO received six DHO appeals through the end of the 2018 calendar year.  Ex. 20-24.

number of continuation pages (i.e. more than one).  Magnusson Aff. ¶ 11; Pet. at 49.

"Rather than rejecting [petitioner's] appeal outright however, [petitioner] was given an

opportunity to correct these deficiencies and resubmit his appeal within [ten] days of the date

of the rejection notice, [June 8, 2018.]"  Magnusson Aff. ¶ 11; *accord* Pet. at 49.

Petitioner wrote two additional appeals to NERO, on June 23, 2018 and June 27,

2018 respectively.  Pet. at 35-38.  Both letters proffered to include appeals for the DHO's

decision.  *Id.*  Petitioner argued that NERO's denial of his appeals for being non-compliant

was incorrect because, in part, he submitted everything timely, was unable to send certified

mail in SHU, and did not attach continuation pages – he attached an attachment.  *Id.* at 36.

Petitioner closed by threatening to elevate his appeal to the Central Office and then file a

§2241 petition with the federal courts.  *Id.* at 34, 37.

NERO again rejected petitioner's appeal on July 18, 2018.  Pet. at 52.  The rejection

indicated several instances of non-compliance.  *Id.*  Specifically, petitioner could "only submit

<u>one</u> continuation page . . . [with legible] <u>text on one side</u>[.]" *Id.*  Further, the appeal was

supposed to have been resubmitted on or before June 18, 2018; instead, the appeal was

untimely as it was received on July 2, 2018.  *Id.*  However, NERO again gave petitioner ten

days within which to resubmit his appeal, in proper form.  *Id.*

A second rejection notice was dated on July 24, 2018.  Pet. at 51.  It again indicated

that petitioner's submissions failed to comply with BOP procedure, including seven additional

and unallowed pages attached to the appeal.  *Id.*  Furthermore, the appeal was untimely as it

was due on or before June 18, 2019; however, it was not received until July 16, 2018 and it

lacked the necessary corrections.  *Id.*

A third rejection notice was dated on August 9, 2018.  Pet. at 50.  Specifically, the appeal was again noted to be untimely as it was received after June 18, 2018.  *Id.*  Instead of being given additional time within which to re-file his appeal, NERO instructed petitioner to "submit a staff memo on BOP letterhead stating [the] reason [the] untimely filing was[ not petitioner's] fault."  *Id.*

In response, petitioner sent a fifth appeal dated August 16, 2018.  Pet. at 40-42.  In it, petitioner argued that the untimely filing was the BOP's fault "because [petitioner had] mailed three letters to [NERO] that contained all the documents for [his] appeal, and [NERO] intentionally refused to file any of them."  *Id.* at 40.  Petitioner contended that he attempted to get a memorandum on BOP letterhead, but his requests went ignored and unanswered.  *Id.* at 40-41.  Petitioner concluded by stating he "did what [NERO] 'ordered' but the staff . . . refused to give [him] the letterhead, so process this appeal any way you like . . . because [petitioner was] going to file with the U.S. District Court[.]"  *Id.* at 41.

NERO again rejected the appeal on September 10, 2018.  Pet. at 48.  Petitioner was instructed that the appeal was untimely and non-compliant because, at this point, in order for petitioner's re-filed appeal to be considered it must be accompanied by a staff memorandum.  *Id.*

Petitioner sent a sixth appeal, dated September 10, 2018, explaining that because of his involuntary commitment in SHU he was unable to access his legal property, the law library, or the commissary.  Pet. at 43.  Accordingly, petitioner was precluded from obtaining paper and stamps; furthermore, his continued requests for a staff memorandum continued to go unanswered.  *Id.*  Therefore, because petitioner diligently attempted to get a memoranda,

yet could not due to no fault of his own, and because he is in the SHU, petitioner argued his appeal must be processed or else he had no choice but to file a habeas petition in federal court. *Id.* at 44.

NERO again rejected the appeal, on September 20, 2018, as untimely and non-compliant. Pet. at 47.

Petitioner filed his seventh, and final, appeal on September 27, 2018. Pet. at 45-46. In it he again stressed his placement in the SHU and his inability to procure stamps and the staff memoranda. *Id.*

## III. THE PETITION

Petitioner argues that because he timely submitted his appeals the Court needs to compel NERO and SERO to accept them and continue with his administrative appeal process. Pet. at 11. Specifically, petitioner contends that his due process rights have been violated by the regional offices' refusal to accept petitioner's appeals. *Id.* at 8-10.

Respondent opposes the petition contending that petitioner has failed to properly exhaust his administrative remedies and the Court cannot be used to circumvent said failure. Dkt. No. 22 at 8-13. Moreover, respondent argues that petitioner has failed to establish a cognizable liberty interest; therefore, petitioner's due process claims are meritless. *Id.* at 13-15. Finally, respondent contends that this Court lacks jurisdiction over petitioner since he has been transferred to Pennsylvania. *Id.* at 15-16.

Petitioner replied to respondent's opposition, admitting that it was clear he had "failed to exhaust the administrative remedies." Traverse at 2. However, petitioner reasons this was because SERO and NERO "deliberately stopped [him] from exhausting." *Id.*

Petitioner's placement in SHU "substantially and drastically affected [his] three appeals . . . as well as his legal work." *Id.* at 3.  Moreover, petitioner contends that he never completed his first appeal because he never received SERO's denial; accordingly "SERO violated and contravened [petitioner's] due process rights by <u>not</u> mailing its decision/response . . . or at least making sure [petitioner] received it." *Id.* at 4.  Further, for his second appeal, despite stamping them as timely, NERO continually refused to process said appeal.  *Id.* at 5-6.  In sum, petitioner asserts that his claim can move forward, despite his failure to exhaust, because NERO and SERO's intentional actions precluding petitioner's appeals from advancing served as an external cause preventing exhaustion and resulting in prejudice.  *Id.* at 13.

## IV.    DISCUSSION

Habeas corpus relief is available if a prisoner is "in custody in violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(c)(3).  A petition is properly brought pursuant to 28 U.S.C. § 2241 where a federal prisoner challenges the execution of his or her sentence, rather than the imposition of the sentence.  *See Adams v. United States*, 372 F.3d 132, 134-35 (2d Cir. 2004); *Jiminian v. Nash*, 245 F.3d 144, 146-47 (2d Cir. 2001).  Execution of a sentence includes, among other things, prison disciplinary actions, loss of GTC, and the computation of the sentence, and thus a § 2241 petition is the proper means to challenge said actions.  *Adams*, 372 F.3d at 135 (citing *Nash*, 245 F.3d at 146); *see also Cook v. N.Y.S. Div. of Parole*, 321 F.3d 274, 278 (2d Cir. 2003) (explaining that a petitioner can use 2241 to challenge a federal official's computation of a sentence, parole decisions, or prison disciplinary actions); *Carmona v. U.S. Bureau of Prisons*, 243

F.3d 629, 632 (2d Cir. 2001) ("[A]ppellant's petition to expunge the Bureau's disciplinary sanctions from his record, including the loss of good time credits, as a challenge to the execution of his sentence rather than the underlying conviction, is properly brought via an application for a writ under § 2241."). Petitions filed under section 2241 must name the petitioner's warden as respondent and be filed in the district of the petitioner's confinement. 28 U.S.C. § 2241(a); *Rumsfeld v. Padilla*, 542 U.S. 426, 435, 447 (2004).

Here, petitioner was incarcerated at Ray Book, in the Northern District of New York, when he filed this petition. Moreover, he challenges the appeal process which would combat the prison disciplinary decisions denying petitioner GTC. Accordingly, the §2241 petition is the appropriate vehicle as petitioner is challenging the execution of his sentence, rather than its imposition. *See Carmona*, 243 F.3d at 632. Further, petitioner correctly commenced this challenge within the district in which he was confined. 28 U.S.C. § 2241(a).[5]

## A. Exhaustion

A petitioner seeking relief pursuant to § 2241 must exhaust his or her administrative remedies. *Carmona*, 243 F.3d at 634; *accord, e.g., Groysman v. Baird*, No. 1:16-CV-4218,

---

[5] Respondent argues that petitioner's transfer during the pendency of his case divests this Court of jurisdiction. However, the Court finds these arguments unavailing. *See, e.g., Ex Parte Mitsuye Endo*, 323 U.S. 283, 304 (1944) (holding that, where a district court originally acquires personal jurisdiction in a habeas case, the subsequent removal of the petitioner to another judicial district does not divest the original district court of jurisdiction), *accord, Hickerson v. Willingham*, No. 3:06-CV-0777, 2006 WL 3422186, at *2 (D. Conn. Nov. 28, 2006) ("Hickerson was confined at FCI Danbury when she filed this petition. Although Hickerson has been transferred to another federal facility, the court retains jurisdiction over the petition."); *Griffin v. Ebbert*, 751 F.3d 288, 290 (5th Cir. 2014) (finding that jurisdiction attaches on the initial filing and was not destroyed by the transfer of petitioner and accompanying custodial change); *Miller v. Laird*, 464 F.2d 533, 534-35 (9th Cir. 1972) ("The transfer of Miller to New Hampshire would not rob the court of jurisdiction over his person, which attached when the original petition for habeas corpus was filed. Justice would miscarry if jurisdiction could be defeated by removing a petitioner from the district after he has filed his petition for habeas corpus and is awaiting response by the government or action by the court."); *Ex Parte Catanzaro*, 138 F.2d 100, 101 (3d Cir. 1943) ("[W]e do not believe that passing about of the body of a prisoner from one custodian to another after a writ of habeas corpus has been applied for can defeat the jurisdiction of the Court to grant or refuse the writ on the merits of the application."), *cert. denied*, 321 U.S. 793 (1944).

2016 WL 4097087, at *2 (E.D.N.Y. Aug. 1, 2016) ("[A] prerequisite to obtaining federal habeas relief pursuant to 28 U.S.C. § 2241 is the exhaustion of administrative remedies.") (internal quotation marks omitted); *Barber v. Perdue*, No. 9:11-CV-0127 (NAM/DEP), 2012 WL 5996342, at *3 (N.D.N.Y. Nov. 9, 2012). Generally, "[f]ederal prisoners challenging any aspect of their confinement can pursue administrative remedies through the Administrative Remedy Program ('ARP')." *Jobe v. Fed. Bureau of Prisons*, No. 1:14-CV-0701, 2015 WL 4038490, at *3 (S.D.N.Y. June 5, 2015) (citing 28 C.F.R. § 542.10-542.19) & *Martinez v. United States*, 19 F.3d 97, 99 (2d Cir. 1994)); *accord Barber*, 2012 WL 5996342, at *3 (explaining "a prison inmate must first exhaust the remedies available through the BOP's Administrative Remedies Program.").

This Court has previously outlined how exhaustion must occur:

> Available to all federal prison inmates is an internal, four-step administrative grievance procedure adopted by the BOP for the stated purpose of "allow[ing] an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." . . . The first step of the prescribed process entails making an effort to obtain an early resolution of the matter by raising the issue informally to staff. . . . In the event this avenue does not lead to a successful resolution, the inmate next may submit a formal written AR to the warden of the particular facility involved, utilizing a designated BP–9 form, within twenty days of the relevant event. . . . If the AR is denied, an appeal may be taken to the appropriate BOP Regional Director within twenty calendar days of the date of denial. . . . As a fourth and final step, an unfavorable decision from the Regional Director may be appealed to the General Counsel's office (also referred to as the "Central Office") within thirty days of the date on which the Regional Director rejects the inmate's appeal.

*Barber*, 2012 WL 5996342, at *4 (citing cases and 28 C.F.R. §§ 542.10(a), 542.13(a),

542.14(a), & 542.15(a)) (internal citations omitted).[6]  In sum, "[u]ntil the BOP's Central Office considers the appeal, no administrative remedy is considered to be fully exhausted." *Strong v. Lappin*, No. 1:09-CV-3522, 2010 WL 276206, at *4 (E.D.N.Y. Jan. 15, 2010); *accord, Barber*, 2012 WL 5996342, at *4.

Here, petitioner admits that he has not properly exhausted his administrative remedies.  Traverse at 2.  Despite petitioner's assertions that he would raise his grievances with the Central Office in his appeals to the Regional Offices, petitioner never filed an appeal with the Central Office.  Pet. at 16.  Accordingly, the appeals are not fully exhausted.  *Strong*, 2010 WL 275206, at *4.

However, petitioner argues that his failure to exhaust is justifiably excused.  Initially, petitioner asserted that "[t]he BOP Central Office would've given [him] the run-around, telling [him] to 'exhaust' [his] appeal with [the] Region even though [he] did by mailing [his] appeal three times and the Region refused to file all three;" accordingly, appealing to the Central Office was futile.  Pet. at 3, 7.  In his reply, petitioner further clarifies that NERO and SERO's intentional actions of failing to return or review his appeals served as external causes precluding him from exhausting his remedies.  Traverse at 6-7, 13.

"The Second Circuit has held that a petitioner may pursue a request for habeas corpus relief, including pursuant to 28 U.S.C. § 2241, even where he has failed to exhaust administrative remedies prior to filing the action in district court, only upon a showing of cause and prejudice." *Barber*, 2012 WL 5996342, at *5 (citing *Carmona*, 243 F.3d at 634

---

[6]  The exhaustion provisions imposed by the Prisoner Litigation Reform Act ("PLRA") do not apply to habeas corpus petitions.  *Carmona*, 243 F.3d at 634 ("[W]e note that although . . . the P[LRA] . . . contains a statutory administrative exhaustion requirement . . . the requirements of the Act do not apply to habeas proceedings[,]" regardless of whether the petition is brought pursuant to § 2254 or § 2241).

("[T]he interests of judicial economy and accuracy are served by requiring that, absent a showing of cause and prejudice, appeals proceed in the first instance through the agency review process.").  This is because (1) administrative review could obviate the need for further judicial review; (2) if judicial review is required, a record has been created; and (3) in due deference to "[a]dministrative autonomy," an inmate should be required to "justify his failure to exhaust his intra-Bureau remedies." *Carmona*, 243 F.3d at 634.  "[H]owever, [when] legitimate circumstances beyond the prisoner's control preclude him from fully pursuing his administrative remedies, the [cause and prejudice] standard . . . [provides for an accepted and well-recognized] excuse[ for] th[e] failure to exhaust." *Id.*

Petitioner first contends that SERO's failure to return, or ensure that petitioner received, his decision denying his appeal served as cause excusing his failure to exhaust. Traverse at 4, 6, 13.  However, in petitioner's response letter to SERO, he referenced his last available appeal of the decision to the Central Office.  *Id.* at 16.  Accordingly, "[w]hether or not it is true that [petitioner] did not receive a written copy of the hearing disposition, compliance with the appeals process was not impractical [as] . . . circumstances [did not further] prevent[] petitioner from pursuing an appeal [that he] . . . had actually [already] started." *Whalen v. Federal Bureau of Prisons*, No. 1:09-CV-1572, 2011 WL 2669112, at *3 (E.D.N.Y. June 30, 2011).  Petitioner "was aware that there had been a decision [on his disciplinary report], aware of what [that decision] was, and . . . initiated an appeal in a timely fashion." *Id.*, 2011 WL 2669112, at *3 n.4.  Petitioner was also aware that a final layer of administrative review remained.  Filing that appeal was an action within his own control.  For whatever reason, petitioner chose not to do what he knew he needed to do.  "Petitioner had more than enough time to exhaust his administrative remedies and his own delay does not

excuse his failure to do so." *Atkinson v. Linaweaver*, No. 1:13-CV-2790, 2013 WL 5477576, at *3 (S.D.N.Y. Oct. 2, 2013) (citations omitted).

Petitioner then alleges that NERO's failure to accept petitioner's appeals also should serve as cause excusing his failure to exhaust. Traverse at 5-6, 13. However, such claims are unavailing. Despite petitioner's prolific mailings, he failed to abide by NERO's directions about when the appeal should be filed and how the appeal should be presented. Petitioner wrote no less than six appeals to NERO, and in each case, NERO responded explaining what the deficiencies were in said appeals and how to correct them. Pet. at 21-56. NERO gave petitioner two opportunities to re-file his appeal, without having to procure a memorandum from staff, along with explicit instructions on what was required to bring his appeal in to compliance. *Id.* at 49, 52. Petitioner chose not to heed those warnings and continue to file non-compliant submissions. Petitioner's decision to ignore NERO's direction and execute his own independent filings were his choices and his actions. The consequence of petitioner's deliberate and autonomous action was NERO's denial of his appeals. This fails to constitute a situation where the circumstances were beyond petitioner's control.

Further, petitioner repeatedly asserts that his SHU confinement served as a legitimate circumstance precluding the successful exhaustion of his claims. Pet. at 8, 36, 43, 45-46. Specifically, petitioner claimed that his (1) inability to go to commissary and buy stamps, paper, and pens; (2) inability to send certified mail; and (3) exclusion from the law library and his legal property all amount to circumstances beyond his control which excuse his failure to exhaust. *Id.* However, petitioner's arguments that any of these circumstances should cause this Court to overlook the exhaustion requirement are unpersuasive.

First, petitioner's own actions demonstrate that he could successfully navigate through

administrative appeals while in SHU: he did it at least once before when he filed his appeal to SERO.  Magnusson Decl. ¶ 9; Pet. at 13-15.  Second, petitioner unsuccessfully attempted to file six appeals throughout his time in SHU.  Pet. at 21-46.  Accordingly, petitioner was continuously able to correspond with the BOP appeal agencies in spite of his proclaimed inability to access his legal property, the law library, or the commissary.  Further, NERO's rejection letters never specified that petitioner's appeals had to be sent via certified mail.  *Id.* at 48-52.  There is also nothing else in the record to support such allusions.  The correctness of the appeals at issue, and by extension the reasons said filings were not accepted and further processed, had nothing to do with whether or not they were certified.  Accordingly, sending the documents via certified mail would not have changed the outcome of petitioner's administrative appeals and should not serve as a basis to excuse his failure to exhaust.

Any attempts by petitioner to argue that he was unaware of how to properly file an administrative appeal are again belied by his own actions.  Petitioner properly appealed his first grievance, of his July 27, 2017 disciplinary report, to SERO.  Magnusson Decl. ¶ 9; Pet. at 13-15.  Accordingly, he was already aware of what the requirements were pertaining to the content of his appeal before NERO provided him with extensive direction through their six rejection notices.  Pet. at 47-52.  Further, petitioner was also well versed with the entirety of the appeal process, as evidenced by his threat to bypass NERO and file a grievance directly with the Central Office.  Pet. at 37.  Petitioner's conclusory assertion that attempting to properly exhaust by elevating his grievance to the Central Office would be futile is unpersuasive.  *See Nelson v. Smith*, No. 6:12-CV-6581, 2014 WL 2807557, at *2 (W.D.N.Y. June 20, 2014) (holding that without "a clear and positive showing that pursuing available administrative remedies would be futile," vague references by petitioner were insufficient to

excuse him from the exhaustion requirement).

Moreover, petitioner's contention that the Central Office would inevitably deny his grievance because the Regional Offices previously had is also unconvincing. *See Rosenthal v. Killian*, 667 F. Supp. 2d 364, 367 (S.D.N.Y. 2009) ("[E]ven if it is likely that [petitioner's] administrative appeals would have been denied, such a showing would not prove futility."); *accord, Atkinson*, 2013 WL 5477576, at \*2 (holding that where "[p]etitioner provides no basis for his futility argument beyond the fact that his prior administrative requests were denied," such arguments are "insufficient as a matter of law to establish futility.") (citing cases).

Therefore, petitioner has failed to establish cause to excuse his failure to exhaust his administrative remedies. Accordingly, the Court need not decide whether he suffered prejudice. *See Stepney v. Lopez*, 760 F.2d 40, 45 (2d Cir. 1985).

### B. Due Process

Even assuming petitioner could overcome the procedural bar his failure to exhaust imposes, his claim fails on the merits.

> Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due [to an inmate] in such proceedings does not apply. . . . Inmates must be provided: (1) at least twenty-four hours advance written notice of the charges; (2) the opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence; and (3) a written statement as to the evidence relied on and reasons for the hearing officer's decision.

*Leyva v. Warden*, No. 9:16-CV-2016 WL 9446861, at \*3 (N.D.N.Y., 2016) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)).

Here, petitioner received all of the process he was owed. He received notification in advance of his hearing, he was provided with the opportunity to present witnesses and have

assistance though he did not accept it, and he was given a written statement as to the evidence relied upon and reasons for the DHO's decision.  There is no separate and independent right to have appeals processed in any particular fashion.  To the extent petitioner argues he was deprived of engaging in the appeals process, such contentions are meritless.  As previously discussed, petitioner was aware of all of the steps in the appeals process, successfully initiated the appeals, and failed to exhaust them.  To the extent any deprivation occurred, it was a self-inflicted wound.

V.    **CONCLUSION**

**WHEREFORE**, it is hereby

**ORDERED** that the petition, Dkt. No. 1, is **DENIED AND DISMISSED** in its entirety; and it is further

**ORDERED** that no Certificate of Appealability ("COA") shall issue because petitioner failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[7] and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: December 18, 2019
          Albany, New York.

Mae A. D'Agostino
U.S. District Judge

---

[7]  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).